MC9CperC

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

           v.                            22 Cr. 644 (JSR)

STEVEN PEREZ,

              Defendant.

------------------------------x
                                         New York, N.Y.
                                         December 9, 2022
                                         4:00 p.m.

Before:

                    HON. JED S. RAKOFF,

                                         District Judge

                         APPEARANCES

DAMIAN WILLIAMS,
     United States Attorney for the
     Southern District of New York
BY:  ASHLEY NICOLAS
     Assistant United States Attorney

DAVID PATTON
FEDERAL DEFENDERS OF NEW YORK
     Attorney for Defendant
BY:  ZAWADI S. BAHARANYI
```

1           (Case called)
2           MS. NICOLAS:  Good afternoon, your Honor.  AUSA Ashley
3    Nicolas for the government.
4           THE COURT:  Good afternoon.
5           MS. BAHARANYI:  Good afternoon, your Honor.  Zawadi
6    Baharanyi with the Federal Defenders.  Mr. Lucha, that is the
7    preferred name, your Honor.
8           THE DEPUTY CLERK:  So Lucha Perez?
9           MS. BAHARANYI:  Just Lucha.
10          THE DEPUTY CLERK:  Can you spell that?
11          THE WITNESS:  Yes, ma'am.  L-u-c-h-a.  The title, the
12   last name would be El, capital E, lower case L, Lucha El.
13          MS. BAHARANYI:  Your Honor, before we again, we have a
14   matter of presentation that I would like to bring to the
15   attention of the Court.
16          THE COURT:  Okay.
17          MS. BAHARANYI:  Lucha has informed me he would like to
18   represent himself going forward and he would like me to remain
19   on as standby counsel, and I would like to continue to assist
20   him in this case, your Honor, but that is something that he's
21   invoked, he's informed me of today.
22          THE COURT:  Well, I will certainly hear him on that,
23   but I think, first, we need to arraign him and then we'll see
24   what the situation is.
25          So let me ask counsel, have you gone over the

1  indictment with him?

2              MS. BAHARANYI:  We have, your Honor.  I've reviewed
3  it with Lucha, he's read it and understands it and he does
4  intend to enter a plea of not guilty.

5              THE COURT:  A plea of not guilty will be entered.

6              How long does the government want for the completion
7  of discovery?

8              MS. NICOLAS:  Thank you, your Honor.  The discovery in
9  this case is relatively straightforward.

10             I will note for the Court the codefendant in this case
11 is currently in the Southern District of Georgia, and I believe
12 he's appearing before your Honor on December 19th.  Given his
13 expected appearance in this court, as well as the intervening
14 holiday, I believe the volume is relatively straightforward, we
15 would ask for three weeks for production.

16             THE COURT:  Today is December 9th.  So that would be
17 December 30th.  How long thereafter, and this would apply if
18 the defendant winds up representing himself, how long, though,
19 does counsel think would be appropriate for any motions to be
20 put?

21             MS. BAHARANYI:  Your Honor, at this time, I'm not sure
22 what the volume is of that discovery --

23             THE COURT:  I think we just heard from the government
24 that it's not particularly large.

25             MS. BAHARANYI:  I guess I'm not sure exactly what that

MC9CperC

1  means, your Honor.  I would ask for a month to review and to
2  make sure Lucha has that much time to review the discovery.
3            THE COURT:  Well, normally, I wouldn't even consider a
4  month.  I will, however, in this case only because if, in fact,
5  he winds up representing himself, I'm not going to change the
6  schedule because of that and he will still have only that one
7  month to file any motions.  This is a month after discovery.
8  So that would be January 30th --
9            THE DEPUTY CLERK:  Friday, January 27th.
10           THE COURT:  Okay.  Friday, January 27th, that's four
11 weeks for any motions.
12           Then we'll have a conference.
13           What's the next business day we have available?
14           THE DEPUTY CLERK:  How about Friday, February 3rd, at
15 4:00.
16           THE COURT:  Friday, February 3rd, at 4:00.
17           That time, if motions have been made that can be dealt
18 with orally, they will be.  If motions have been made that
19 require a written response, we'll set a date then for the
20 written response.  In any event, we'll set a trial date at that
21 time.
22           Pursuant to Section 3161 of Title 18, I will exclude
23 from calculations under the Speedy Trial Act all time between
24 now and February 3rd, providing such time is necessary to
25 complete discovery and draft motions, and for those and other

1    reasons, the best interests of justice in excluding such time

2    substantially outweighs the interest of the public and the

3    defendant in a speedy trial.

4              Now, let's talk about the request to go *pro se* to

5    represent yourself.

6              So, do you have any legal training?

7              THE DEFENDANT:  What was that, your Honor?

8              THE COURT:  You can stay seated, but just bring that

9    microphone close to you.

10             Do you have any legal training?

11             THE DEFENDANT:  I've studied -- I studied my law.  I

12   studied the Constitution, I studied codes and regulations.

13             THE COURT:  For example, I just made a ruling under

14   Section 3161 of Title 18 of the United States Code.  Do you

15   have any idea what that is?

16             THE DEFENDANT:  Not exactly, but I can go look it up.

17             THE COURT:  So it takes most people three years to

18   learn the law and then it takes them several more years to

19   become proficient in practice, but you're going to do it in the

20   next few weeks?

21             THE DEFENDANT:  Well, your Honor, to my understanding,

22   the Constitution is the supreme law of the land and nothing is

23   above it.

24             THE COURT:  That's right, but there's a lot below it,

25   most of which is what will be involved in your case.

1          THE DEFENDANT: I comprehend, your Honor. But also,
2    it's to my understanding that anything that is contrary to the
3    Constitution is notwithstanding. So it's --
4          THE COURT: So that may be, but if you say to me, I
5    think some proceeding in this case is unconstitutional and I
6    disagree with you, what are you going to do then?
7          THE DEFENDANT: If you disagree, I mean -- this is
8    what the court venue is for, to clarify what's wrong and what's
9    right and what is and what isn't.
10         THE COURT: Well, my point is this, every time someone
11   has appeared *pro se* in my court, the jury has convicted them
12   like that, in a matter of minutes, and that was because they
13   didn't know the proper way to defend themselves. They thought
14   they knew it because Hope Springs Eternal or because they
15   thought they were smart or because they thought they could bone
16   up on the law, but it turns out they were wrong, and all those
17   people who are very vigorous in deciding that they could
18   represent themselves wound up going to prison.
19         Now, maybe you're the great exception, but I want you
20   to understand the risk that you're undertaking. You're making
21   it much more likely that you'll lose this case than would
22   otherwise be the case.
23         Do you understand that?
24         THE DEFENDANT: I comprehend, your Honor. I just feel
25   as if I'm using nothing but the supreme law. I don't feel that

1    I'm above the law.  I respect the law and I honor the law.  I
2    swore an oath to always respect the law.
3            THE COURT:  That's fine.  I'm not talking about law,
4    I'm talking about your life.
5            THE DEFENDANT:  I comprehend.
6            THE COURT:  And I'm just saying if you want to
7    increase your chance of spending a substantial part of your
8    life in prison, the best way to do it is to represent yourself.
9            THE DEFENDANT:  I comprehend, your Honor.  As you just
10   gave me an example, I would like to give an example, if I may.
11           THE COURT:  An example of what?
12           THE DEFENDANT:  Well, you just asked me -- you just
13   told me if you asked me a question about law -- I don't want to
14   go verbatim because -- you basically said to me right now, if
15   you say one thing and I say the other, we disagree, then how
16   would we work that out?  So I just want to say that if I read
17   something and I do the research and I comprehend it for what it
18   is, for example, like something simple, like, okay -- how can I
19   put it best?  Something simple like, okay, United States Labor
20   v. Rodriguez.  For example, statutes, codes, and regulations
21   are not law.  I didn't -- this is not something that I -- this
22   is just an example I'm just trying to give you, your Honor.
23   This is not something that I made up, this is a case law from a
24   federal case.  So if a federal case law is telling me that
25   statutes, regulations, and codes are not law, if a federal

MC9CperC

1  judge --
2         THE COURT:  In what case?  So we'll see if you can act
3  as your own lawyer.  What is the first name of Mr. Rodriguez?
4         THE DEFENDANT:  What was that?
5         THE COURT:  What's the name of Mr. Rodriguez?  You
6  said the case was United States v. Rodriguez; right?
7         THE DEFENDANT:  Yeah.  I was just giving an example --
8         THE COURT:  Excuse me.  And there are about a thousand
9  cases by that name, and I want to look at the one you're
10 referring to.
11        THE DEFENDANT:  I don't have the exact codes in front
12 of me.
13        THE COURT:  Do you have even his name?
14        THE DEFENDANT:  Not on the paperwork with me right
15 now.
16        THE COURT:  So, this is a good example.
17        THE DEFENDANT:  Okay, but --
18        THE COURT:  How can I make a decision on something
19 that you're asserting based on a case that you don't even give
20 me enough information to find?
21        THE DEFENDANT:  Your Honor, I was just giving you an
22 example.  I'm not trying to use this case as a basis for
23 anything right now.
24        THE COURT:  But I have a feeling deep in my heart that
25 you probably are not interpreting that case correctly, but I

1  could be wrong.  I'll never know until I see the case.

2       THE DEFENDANT:  So, we won't know until we get there,
3  but again, I'm not using that right now to defend myself.  I'm
4  just giving you an example as you did.  I'm just saying, for
5  example, if that statement was made in the case, let's just say
6  hypothetically that is what it says, that statutes, codes, and
7  regulations are not law, and that's a federal case --

8       THE COURT:  It's almost impossible that there's a case
9  that says that, extremely unlikely.  Extremely unlikely.  But
10 I'm happy to look at any case that you can give me the
11 information to find the case, but I need the name, I need the
12 citation.

13      THE DEFENDANT:  That's what my affidavits and my
14 motions will be for, your Honor.

15      THE COURT:  Let's talk about that.  I have a strict
16 rule, and that is that no one can submit any affidavit, any
17 papers, any emails, any written communication in any of my
18 cases until they first convene a telephone conference call with
19 the government and the Court, and that saves both you and me a
20 lot of time because, often, it's matters I can deal with right
21 then and there on the telephone.

22      So if you're planning to submit something, you're
23 going to have to get a hold of the government and get on the
24 phone, and then if I agree, you can then submit something in
25 writing, we'll give you a date to do it by, and you'll have to

1  learn how to file it with the clerk of the court.  If you don't
2  do that and just send me something in the mail or by email or
3  however, I will disregard it, I will pay no attention, I will
4  not read it.
5       So, there are a lot of hurdles.  The lawyer who
6  presently represents you is an extremely accomplished lawyer.
7  The Federal Defenders in the Southern District of New York are
8  among the best lawyers in the whole country.  You can't get a
9  job as a Federal Defender in New York without competing among
10 the very best lawyers, and only the best of the best are
11 chosen.  So why do you want to give that up?
12      THE DEFENDANT:  I'm asking her to still be my standby
13 and she agreed.
14      THE COURT:  Well, I haven't agreed yet.  So it seems
15 clear from what you just said that you recognize that you need
16 to have someone who is learned in the law through years of
17 training and experience to at least help you out.  That's why
18 you're asking her to stand by; right?
19      THE DEFENDANT:  Not really.  I'm asking for her as
20 standby because my experience dealing with the courts around
21 this country, whether I say I want to present myself or not, *in*
22 *propria persona*, the courts are going to still force somebody
23 by my side, whether I say I want to present myself, whether
24 they find me competent enough to present myself, they always
25 stick somebody at my side.  It's something that I've already

1  gone through more than once and it's an experience --

2  THE COURT:  But in this case, it's up to me, it's not
3  up to some other judge in some other case.

4  THE DEFENDANT:  I comprehend that.

5  THE COURT:  So what I'm having difficulty with is
6  this:  So supposing you want to file an affidavit.

7  THE DEFENDANT:  Yes.

8  THE COURT:  So the first thing you would have to do is
9  convene a telephone call with the prosecutor and then the two
10  of you would jointly call me and I would ask what the affidavit
11  is about.  I would decide whether or not I want to let you file
12  the affidavit and I would decide what date, if I did allow you
13  to file it, what date you would file it and so forth.

14  Now, if you had counsel, she could do all that.  If
15  she is only acting as standby counsel, she can't do that.
16  That's not the role of standby counsel.  You have to do it.
17  She might be on the telephone with you, but you got to do it.

18  Why do you want to put yourself in that position?

19  THE DEFENDANT:  First of all, sir, I feel every man
20  should deal with his own affairs, especially if he feels and
21  knows he has done nothing wrong.

22  Again, I'm in a federal courtroom saying I'm willing
23  to present myself because I feel the federal courtroom would be
24  the most honorable.  Every other state court I went to was not
25  honorable.

1          THE COURT:  Well, I have no idea what your other
2    situation is, but I certainly agree that federal courts tend to
3    be very high quality courts, and I hope to live up to that in
4    every case I have.
5          But here's what really bothers me.  If, in fact, you
6    are innocent, then a tragedy would be for you to be convicted.
7    So I don't understand why you want to increase the chance that
8    you will be convicted by representing yourself when the -- if
9    you are innocent, a very accomplished lawyer like the one who
10   presently represents you could do a much better job of proving
11   your innocence.
12         I'll give you a simple example.  Supposing the case
13   goes to trial and you want to get up on opening statement and
14   start describing your recollection of the underlying events.
15   The likelihood is I'll have to cut you off because it will go
16   beyond what is permitted to a lawyer on opening statements, and
17   for opening statements you're acting the role of a lawyer.
18   Your lawyer would know where the line is drawn, she would know
19   what she could say on opening statements, and not get cut off,
20   and what she couldn't.  None of this would preclude you from
21   later on testifying if you wanted to, and you have a right to
22   testify.  You also have a right not to testify.  But, when
23   you're acting *pro se*, now you have to play by the rules of
24   being a lawyer and, therefore, many, many things would result
25   in my saying this is what's happening.

1         Many, many *pro se* cases I've had, the defendant gets
2    up and he or she speaks for about two minutes and then I have
3    to cut them off because the law says that a lawyer can't give
4    an opening statement that goes beyond certain boundaries for an
5    opening statement.
6         So there it is, you've hurt yourself, whereas your
7    lawyer could do everything you wanted to do because she would
8    know where the lines are drawn.
9         So it's really hard for me to know why you think
10   you'll be better off if you are innocent, as you assert.  It
11   would be a tragedy for you to be convicted.  No one would be
12   more upset than me.  I've written a whole book on this.  And
13   what I am constantly amazed at and heartbroken by is people who
14   don't have legal training, thinking that they can help
15   themselves by pretending to be a lawyer.  It's a little bit
16   like if you were suffering from a heart problem and you needed
17   surgery and you said I'm not going to have you operate on me,
18   doctor, I'm going to operate on myself, even though I never had
19   any medical training, and the likelihood is you will kill
20   yourself.
21        So, you have an absolute right to go *pro se*, I just
22   want you to be very aware of how stupid that might be.
23        You understand?
24        THE DEFENDANT:  I comprehend.
25        THE COURT:  All right.  So, do you want to think about

MC9CperC

1    it for a day or two before you make a final decision?
2             MS. BAHARANYI:  Your Honor, if I may have one moment.
3             THE COURT:  Yes.
4             (Defendant and counsel conferred)
5             MS. BAHARANYI:  Thank you, your Honor.  We've had a
6    moment to consider the Court's words.  We do think at this time
7    he does not want to move forward with the motion to represent
8    himself.  I will stay on as his counsel.
9             THE COURT:  Okay.  I think that's a very wise
10   decision, and I think you're lucky to have such a good lawyer.
11            So, we had the schedule, I don't think there's
12   anything else we needed to take up today, unless counsel has
13   anything else.
14            MR. MEAD:  There's nothing from the government's
15   perspective, your Honor.
16            THE COURT:  Anything from defense?
17            MS. BAHARANYI:  Not from the defense, your Honor.
18   Thank you.
19            THE COURT:  Very good.  Thanks a lot.
20                              * * *