```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,              New York, N.Y.

 4            v.                            22 Cr. 644 (JSR)

 5   STEVEN PEREZ
          a/k/a "Lucha El Por
 6               Libertad,"

 7                Defendant.

 8   ------------------------------x        Argument

 9                                          August 25, 2023
                                            2:05 p.m.
10

11   Before:

12                        HON. JED S. RAKOFF,

13                                          District Judge

14
                              APPEARANCES
15
     DAMIAN WILLIAMS
16        United States Attorney for the
          Southern District of New York
17   BY:  ASHLEY C. NICOLAS
          MADISON R. SMYSER
18        SARAH MORTAZAVI
          Assistant United States Attorneys
19

20   FEDERAL DEFENDERS OF NEW YORK
          Attorneys for Defendant
21   BY: ZAWADI S. BAHARANYI
         AMANDA JOY MAYO
22

23   Also Present:

24   Arjun Ahuja, Paralegal USAO
     Ananya Sankar, Paralegal USAO
25   Sarah Kwon, Paralegal Federal Defenders of New York
```

1           (Case called)

2           THE DEPUTY CLERK:  Will the parties please identify
3  themselves for the record.

4           MS. NICOLAS:  Good afternoon, your Honor.  At
5  counsel's table for the government, Ashley Nicolas, Madison
6  Smyser, and Sarah Mortazavi.  We are also joined by paralegal
7  specialist Arjun Ahuja.

8           THE COURT:  Good afternoon.

9           MS. BAHARANYI:  Good afternoon, your Honor.  Zawadi
10 Baharanyi of the Federal Defenders of New York.  I am joined by
11 Amanda Mayo and Sarah Kwon.  We are all here on behalf of Lucha
12 El, who is seated to my right.

13          THE COURT:  Good afternoon.

14          All right.  This conference was requested to deal with
15 various motions *in limine* that have been filed.

16          Before we turn to that, I will note for the record
17 that the defendant filed with the Clerk of the Court a couple
18 of weeks ago a document that he submitted *pro se* that he
19 labeled a motion to dismiss.  The first portion of that motion
20 appears to be an interpretation of the *Bruen* case from the
21 Supreme Court.

22          He then turns to expressing his views of the Court.
23 He says, beginning on page 4, "Judge Rakoff is an evil man.
24 This judge has been doing everything in his power to make sure
25 the injustice done against me sticks.  He is a terrible man who

1   is and has allowed a malicious prosecution against me,
2   Lucha El, a man just like him.  I say this.  He will not break
3   me because Allah is the best of planners.  Judge Rakoff is an
4   example of what is wrong with the system.  The man is playing
5   with my life, going against the law of the land, going against
6   the Supreme Court's decision.  He continues to spit on my
7   rights as a man.  This man is tyrant relying on British
8   colonial law."  And he continues with similar accusations for
9   another considerable length.
10            Fortunately, the role of the judge in any case is to
11  be oblivious to such attacks, and I will be.  But I note
12  something else, which is that the defendant had no authority to
13  file this.  The United States Court of Appeals for the Second
14  Circuit addressed this most recently in a case called *United*
15  *States v. Haje* that was decided on July 20 of this year.  It
16  says, "The Sixth Amendment gives criminal defendants the right
17  to representation by counsel or, should they so choose, to
18  represent themselves.  A defendant has, however, no right to
19  hybrid representation in which he is represented by counsel but
20  supplements his lawyers' work with selected *pro se*
21  submissions."
22            I should ask defense counsel, did you know that your
23  client had submitted that?
24            MS. BAHARANYI:  Your Honor, at the time of the notice
25  is when we received notice about the letter, the document.  We

1  have since spoken with him.  We have actually at this time --
2  well, last week, on his behalf, withdrew the interlocutory
3  appeal.  So I don't think that is something that is still
4  pending or an issue in this matter at this time.
5          THE COURT:  It is not even clear to me that it was an
6  interlocutory appeal because it had different labels on it.
7  But that is not really my point.  My point is that, as the
8  Second Circuit has made crystal clear just a few days before he
9  submitted this, if he is represented by counsel, he can't
10 submit anything at all.  You understand that, do you not?
11         MS. BAHARANYI:  Your Honor, I absolutely understand
12 you.
13         THE COURT:  So should he submit anything else to this
14 Court—and he submitted this to the Clerk of the Court—I will
15 direct that it be not filed and disregarded in its entirety.
16 Understood?
17         MS. BAHARANYI:  Understood, your Honor.
18         THE COURT:  Very good.
19         Now, turning to the motions *in limine*, the government
20 first asked for a pretrial ruling that the following two
21 categories of evidence are admissible.  Before I turn to my
22 rulings, I want to remind counsel that, first, there is no
23 actual right to a motion *in limine*.  It is nowhere contained in
24 any law of the United States.  Nevertheless, most judges,
25 including this judge, allow it as a way to try to expedite and

simplify trials.  But what I have learned from long experience is that many issues cannot be resolved before trial because they turn on the specific testimony that is offered in response to a specific question.  Moreover, frequently, even where a particular kind of evidence has been in general excluded on a motion *in limine*, frequently the door is then opened by the party that won that motion through other submissions they make, and it would be totally unfair to ignore that door-opening.  So all decisions that I make on motions *in limine* are for guidance purposes but may be subject to limitations, further objections, further discussions as we go along.

Having said that, the first category that the government seeks a ruling that it's admissible is "gun purchases made by Keith Vereen, the defendant's coconspirator, as direct evidence of the conspiracy to violate 18 U.S.C. 922(a)(3) charged in Count One of the operative indictment or, in the alternative, under Federal Rule of Evidence 404(b)."  I think at least some of that evidence is admissible as direct evidence of the conspiracy.  I am more doubtful that it would come in under 404(b).  So the best I can tell you at this point is that it is presumptively admissible, but I am not making a categorical ruling, and more specific objections will be considered when specific evidence is produced.

This is even more true of the second category, which is, "The facts and circumstances surrounding the arrest of the

1  defendant and others following a car stop and armed standoff in
2  Massachusetts on or about July 3, 2021."  So I think some of
3  that evidence is evidence that bears on the pattern of gun
4  trafficking that forms the basis of the conspiracy charge, but
5  other of the evidence does not seem to me to be so obviously
6  relevant, let alone unprejudicial.  For example, testimony from
7  Massachusetts state troopers about how the incident escalated
8  into a standoff seems to me irrelevant and potentially
9  prejudicial under Rule 403.
10          So, again, the best I can do for you at this point is
11 to say that, as a general matter, some of the facts and
12 circumstances surrounding the arrest of the defendant and
13 others following the car stop in Massachusetts on or about July
14 3 will be likely received, but we will have to take it one item
15 and one question at a time.
16          Now, the government also moves to preclude the
17 defendant from introducing evidence in argument or pursuing on
18 cross-examination the following:
19          First, testimony in a prior suppression hearing by New
20 York City Police Department officer Jarren Smalls.  Let me ask
21 the government, Mr. Smalls is not a government witness or is
22 he?
23          MS. NICOLAS:  He is, your Honor, yes.
24          THE COURT:  So I don't see how I can either exclude or
25 permit inclusion of that testimony until I hear what is brought

out on direct testimony and what is the nature of cross-examination. I don't think I can rule on that one at all at this stage.

Second, the government wants to preclude evidence of a dismissed *pro se* civil lawsuit brought by the defendant and others arrested with him in Massachusetts on or about July 3, 2021, alleging various violations of their constitutional rights. That motion to exclude is granted.

Third, the government seeks to preclude the defendant from introducing evidence, argument, and so forth that the defendant's receipt of firearms was not unlawful under the Second Amendment. That motion to exclude is granted.

Turning to the defense motions, the defense wants to first exclude evidence that Mr. Lucha did not have a New York State firearms license. I am skeptical that that will come into evidence, but I'm not making a final decision. What should happen in a situation like this is at the point in time where the defense proposes to put a question or introduce evidence relating to that, they should first approach the sidebar and we will hear where things stand at that moment in time out of the presence of the jury.

Next, the defense moves to exclude the testimony of the government's firearms expert, Special Agent Lennea Gordon. That motion is denied.

Next, the defense moves to exclude testimony of the

government's historical cell site location expert Andrew

Petersohn or hold a *Daubert* hearing.  I think that a *Daubert*

hearing would be useful on the limits of that testimony.  When

does the government expect to call Mr. Petersohn.

        MS. SMYSER:  It depends on how quickly things are

moving, your Honor, but I would expect on Tuesday morning is

probably most likely.

        THE COURT:  So what I think we will do is we will find

a place Monday afternoon to have that hearing.  I don't imagine

it will be a very lengthy hearing.  But I am concerned, for

example, about whether his testimony will bring out, as I think

is appropriate from an expert, the limits of what he is able to

opine upon in terms of location and alternative possibilities

and things like that.  So I think it's best to clarify that

with him in advance through a brief *Daubert* hearing, so we will

do that Monday afternoon.

        MS. SMYSER:  Your Honor, his testimony certainly will

opine on some of those limitations which --

        THE COURT:  Maybe this will be moot after we hear what

he is going to say in more specific detail, but it can't hurt

to get it settled before he testifies Tuesday morning.

        MS. SMYSER:  Understood.  I just wanted to flag one

issue for the Court about a Monday afternoon hearing.

Mr. Petersohn has a prior commitment to testify at a municipal

hearing in Pennsylvania on Monday evening.  He would need to

1    leave the courthouse here by 4:30.  If it's possible to do it
2    at lunch or slightly earlier in the day, I think that would
3    greatly assist him, but I just wanted to flag that for the
4    Court.
5            THE COURT:  Linda, what else do we have on, if
6    anything, that afternoon?
7            THE DEPUTY CLERK:  We just have a 4:30 criminal status
8    conference.
9            THE COURT:  So why don't we do this.  I will excuse
10   the jury sometime between 3:30 and 4:00, and we will turn
11   directly, then, to that, so he will be out of here by 4:30.
12           MS. SMYSER:  Okay.  Understood, your Honor.  Thank
13   you.
14           THE COURT:  Now, is there any motion that I have
15   overlooked?
16           MS. NICOLAS:  Not from the government's perspective,
17   your Honor.
18           (Counsel confer)
19           MS. BAHARANYI:  Your Honor, no motions that you have
20   overlooked.
21           If I may have a moment just to respond briefly
22   regarding your Honor's ruling on Massachusetts?
23           One of the, perhaps, issues that we have encountered
24   in preparing for the motions *in limine* is grappling with how
25   the government intends to move forward with this conspiracy

1  charge, and specifically whether the government is seeking to
2  prove that firearms are received into the state of residence of
3  New York as part of that conspiracy charge or whether their
4  theory is different, that these are firearms that are received
5  into various other states by other individuals.
6          THE COURT:  All right.  Well, let's ask them.
7          MS. SMYSER:  Your Honor, I think it's both.
8          So, first and foremost, those guns are received in
9  New York in the state of residence of the defendant, but the
10 conspiracy is a little broader than that.  As discussed in our
11 motions, before that Massachusetts arrest, the defendant and
12 others who are arrested traveled from New York through
13 Massachusetts, and they were headed to Maine.  Before they left
14 for Massachusetts, they met in Rhode Island.  So the
15 government's theory is that they transported those firearms
16 from New York with them to Rhode Island, and they met some
17 Rhode Island residents who are part of that arrest, including
18 the leader, Jamhal Latimer, including another man who was
19 arrested, Quinn Cumberlander.  So part of 922(a)(3) is the
20 transport of firearms that were obtained outside of someone's
21 state of residence into that state of residence.  So this
22 conspiracy is broader than just simply New York, but it
23 certainly --
24         THE COURT:  All right.  So that should answer the
25 question.  It will be -- I will start to think about, in terms

of the charge, whether we will need to, as I think we may, have a unanimity charge, that the jury has to indicate whether they unanimously found it was the New York or the other or both that were involved or something along those lines. I am painting with too broad a brush here, but you get the idea. But, anyway, I think now you have the answer to your question.

MS. BAHARANYI: Your Honor, and I think it further underscores some of our confusion about the relevance of Massachusetts in all of this, but we understand the Court's ruling and we will bring that up at the appropriate time.

THE COURT: Okay. Now, let me just mention, in terms of procedures, the jury panel is usually available by 10:30, sometimes as early as 10:00, so why don't we convene in this courtroom at 9:30, even though it may be that there will be nothing to do until 10:00.

How long does the government want for openings? I'm sorry, before we get to opening statements, we will pick 12 jurors and then two alternates. With respect to the 12 jurors, the government will have six challenges, the defense ten, and we will do that in six rounds. In the first four rounds, the government has one challenge followed by two by the defense. In the last two rounds, it is one and one.

If any party waives their challenge in a given round, they lose that challenge; but unless both sides waive all their challenges in that round, we continue. So, for example, if in

1     round three the government waived its challenge but the defense
2     exercised at least one of its two challenges, then the
3     government will lose that challenge, but we would still go on
4     to round four.  If, by contrast, in round five both sides waive
5     their challenges, then we don't go on to round six.  Then we
6     have the jury.
7              With respect to the alternates, each side will have
8     one challenge, but they will be exercised not in the same
9     round.  So it will be first one challenge for the government,
10    then we will fill -- if the government exercises a challenge,
11    we will fill that seat and there will be one challenge for the
12    defense.
13             I use the jury box method of selection, so we will
14    randomly call up 12 jurors.  I will question them for cause,
15    and then we will turn it over to prosecution and defense
16    counsel for their peremptory challenges.
17             Any question about any of that?
18             MS. NICOLAS:  No question on the process, your Honor,
19    no.
20             (Counsel confer)
21             MS. BAHARANYI:  Not at this time, your Honor.
22             THE COURT:  Well, this is the time.
23             MS. BAHARANYI:  I think by that, your Honor, we may
24    have a question before we get started on Monday morning, but I
25    hope to preview that to the Court well in advance.  We just

1  want a moment to discuss and also discuss with our supervisors.
2           THE COURT:  Well, do you want to give me a hint?  We
3  are having this conference because the parties wanted to try to
4  sort things out as best they could before we started on Monday.
5           MS. BAHARANYI:  To be very transparent, your Honor, I
6  just want to make sure I understand the full rounds process.
7           THE COURT:  Okay.  It's the one I have used for the
8  last 27 years, so you might want to talk to your colleagues --
9           MS. BAHARANYI:  Right, exactly.
10          THE COURT:  -- who have seen it many times.
11          MS. BAHARANYI:  We have so many people in our office
12 who can help us on that.
13          THE COURT:  Okay.
14          Then opening statements, how long -- and by the way,
15 usually it takes me about an hour to pick the jury.  We will
16 then take a 10- or 15-minute break, and then we will have
17 opening statements.
18          We won't have lunch until 1:00.  This will be true
19 every day.  We will sit normally from 9:30 to 1:00 with a short
20 break mid morning and then we will sit in the afternoon
21 possibly as late as 4:30, never more than 4:30.  Some days it
22 will only be until 4:00 if I have other matters that have to be
23 taken up, like the one we just discussed.
24          So anyway, how long does the government want for
25 opening statements?

1   MS. NICOLAS:  Your Honor, in the neighborhood of about
2   ten minutes.
3   THE COURT:  Okay.  And defense counsel?
4   MS. MAYO:  About the same, your Honor.
5   THE COURT:  That's fine.  Okay.
6   MS. NICOLAS:  Your Honor, if I may, just one point on
7   openings just to clarify one of your Honor's earlier rulings,
8   just being cognizant and not wanting to draw objections in the
9   opening.  As it relates to the New York gun registration of the
10  defendant, I do expect that there will be mention of the
11  defendant's ability to obtain guns in his own state as part of
12  his motivation to obtain guns from out of state, and so I do
13  want to flag that.
14  THE COURT:  That's the rationale you gave and I
15  understand that, and tentatively I am persuaded.  But this was
16  not -- this came up in the motions *in limine* in regards to
17  another person, not the defendant, or maybe I misunderstood.
18  MS. NICOLAS:  I do think it was raised as to the
19  defendant.
20  THE COURT:  I'm sorry.  I got confused by the name
21  there.  Okay.  Very good.  Anyway, I think that is a
22  permissible argument.  If the evidence turns out to be excluded
23  later on, of course I am going to instruct the jury at the very
24  beginning that nothing that counsel says is evidence, so we
25  will proceed accordingly.  But thank you for that

1    clarification, because I think that it does—my mistake in

2    forgetting the numerous names that the defendant operates

3    under—directly pertain to the motive of this defendant, so I

4    think that is a likely basis for admissibility.

5             MS. NICOLAS:  Thank you, your Honor.

6             I think the government doesn't have anything else to

7    raise at this time.

8             THE COURT:  Let me ask defense counsel, how would you

9    prefer my referring to the defendant?

10            MS. BAHARANYI:  Your Honor, we would prefer that we

11   use his name Lucha El.  I also know we are not at that stage

12   yet, we did propose some language about how to address this

13   with the jury in jury instructions, and that's something that

14   maybe we can discuss on Monday morning, as well.

15            THE COURT:  Yes.  We will have a little time Monday

16   morning.  I think I will have to tell the jury during voir dire

17   his other names, because someone may know him or something like

18   that, but as the trial goes on, I am happy to keep it to

19   Lucha El.  Is that how you pronounce it?

20            MS. BAHARANYI:  Lucha El.

21            THE COURT:  Lucha.  Thank you very much.

22            MS. NICOLAS:  The one point the government would raise

23   on this, your Honor, and of course no offense intended to the

24   defendant at all, but much of the government's evidence will

25   contain the defendant's legal name, Steven Perez.  For

1    instance, Western Union records do not refer to him as Lucha,
2    and there will be witnesses who only know him by his government
3    name.
4             THE COURT:  That's another reason why at least we have
5    to -- the jury has to know of his other name.  But I don't want
6    to have to, every time I refer to him, go through several
7    names.  I think that would not be appropriate.  So I am happy
8    for, in my statements, to refer to him as Lucha El.
9             Anything else we need to take up?
10            MS. BAHARANYI:  Yes, from the defense.
11            This is not with respect to trial procedure.  We put
12   in a motion requesting that Lucha El be able to be removed from
13   the ankle monitor curfew condition, but I think we have that
14   request starting as of Monday.  He is here in our office
15   already, and I understand that removing an ankle monitor just
16   requires cutting it off by one of us or pretrial.  My request
17   would be to allow that modification to take place as of
18   effective today, meaning he would be able to remove the ankle
19   monitor or we would be able to do it for him today before he
20   leaves our office.
21            THE COURT:  What's the government's view?
22            MS. NICOLAS:  Your Honor, I don't know that there is a
23   justification to change the bail conditions in the weekend
24   before a criminal trial, where there is a strong likelihood of
25   success on the merits.  The government's evidence is quite

strong of conviction and ultimately a jail sentence. I think at any point during an individual's release, that the weekend before they begin their trial is perhaps the time when temptation to flee would be at its greatest. Acknowledging that the defendant has been compliant with his conditions, I understand the prejudice that the defense has argued and the desire to remove it the morning of trial. I don't see an additional justification to remove it today.

MS. BAHARANYI: If I may add, your Honor, of all of my clients, I have never been less concerned about flight than Lucha El. He is very eager to have his day in court, has been here for every single appearance, has made every check-in with pretrial, has been fully active and engaged. That is not going to change over the weekend. I think he is just even more eager to have his day in court come Monday.

THE COURT: Well, I don't understand. At this point it's simply an inconvenience, whereas starting at the trial it's more than an inconvenience, it's something that could be visible to the jury, and that's why I allowed it to be removed starting Monday morning. At this point I don't understand why it is anything more than just an inconvenience and so what?

MS. BAHARANYI: I think it is also no longer -- the prejudice is certainly there, and that's why we absolutely want it removed by trial. But there is also this need for these conditions to be meeting some -- well, meeting a need, and he

1  has shown himself over several months to not be any sort of
2  flight risk warranting continued ankle monitoring even for
3  another day or two longer.  I think he's shown quite the
4  contrary.
5         THE COURT:  I am impacted, I'm sorry to say, by the
6  fact that over the last few years, after many, many years of
7  never having defendants flee, I and I think some of my fellow
8  judges have repeatedly been confronted with people who have
9  fled, and often they are people whose able lawyers said, you
10 don't need further conditions, Judge, because he's appeared for
11 every proceeding and all like that and then, as trial neared,
12 for the very reasons the government just mentioned, it became
13 more stressful for the defendant.  In two cases I am thinking
14 of in particular in the last few years, the defendant fled and
15 was never recovered.  So I am going to deny the motion.
16        That concludes the proceeding.
17                              oOo