

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

September 11, 2023

<u>By ECF</u>
The Honorable Jed S. Rakoff
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

> Re:   *United States v. Keith Vereen*, 22 Cr. 644 (JSR)

Dear Judge Rakoff:

The Government respectfully submits this letter in advance of the sentencing of Keith Vereen ("Vereen" or the "defendant") in the above-captioned case, which is scheduled for September 18, 2023.  On March 15, 2023, the defendant pleaded guilty to conspiracy to commit gun trafficking, in violation of Title 18, United States Code, Section 371, in connection with his months-long membership in a conspiracy to illegally purchase at least 25 firearms.  As explained below, the Government submits that a sentence of at least 37 months' imprisonment is necessary to serve the legitimate purposes of sentencing.  The Department of Probation ("Probation") has likewise recommended a 37-month term of imprisonment in the final Presentence Report ("PSR"). (PSR p. 27).[1]

I.      **Factual Background**

a.  **Overview**

Between at least in or about May 15, 2020 and in or about November 4, 2020, Vereen — a Bronx native who at all relevant times resided in South Carolina —purchased approximately 25 firearms on behalf of others (the "Vereen Guns") and transported those firearms to, among other places, New York, for resale.  Of the Vereen Guns seized by law enforcement in this case, at least six have been recovered in states outside South Carolina: three firearms were recovered in New York, including one from co-defendant Steven Perez, a/k/a/ "Lucha," (Perez); one firearm was recovered in Wakefield, Massachusetts during a traffic stop and vehicle search of a group of Perez and others, including several individuals who resided in either New York or Rhode Island; one firearm was recovered in New Jersey; and one firearm was recovered in Springfield, Pennsylvania.

---

[1] Defense counsel has not submitted a sentencing memorandum or made a recommendation with regards to sentencing in this case. Accordingly, the Government respectfully requests leave to file a supplemental memorandum should counsel file a submission prior to the sentencing hearing scheduled for September 18, 2023.

During each firearm purchase, Vereen completed mandated federal forms and falsely stated that he was the true purchaser of the firearm he was buying. Vereen is not a licensed firearms dealer. A list of the firearms purchased by Vereen is included as Exhibit A.

In the course of his firearms trafficking scheme, Vereen received payment for acting as a "straw purchaser" for unlicensed out-of-state buyers, as confirmed by wire payments submitted by individuals outside of Vereen's state of residence at or around the time of these firearms purchases. For example, on or about September 22, 2020, Perez sent Vereen a $350 Western Union payment from a check cashing store in the Bronx, which was directed to Vereen at a South Carolina address. On or about October 1, 2020, Vereen purchased a Canik TP9 9mm firearm (the "Canik") at a federal firearms licensee ("FFL") in South Carolina. Two days later, on or about October 3, 2020, Vereen traveled to New York, transporting several firearms, including the Canik, to New York residents, including Perez. The Canik was ultimately recovered from Perez's possession on or about June 23, 2021. Similarly, on or about September 12, 2020 — the same day that he purchased six firearms — Vereen received two wire payments from a check cashing store in the Bronx, New York. The first payment was a $600 transfer from an unindicted co-conspirator (CC-1), and the second was a $911 transfer from a second unindicted co-conspirator (CC-2). Vereen subsequently met with those individuals, accompanied by Perez, in the Bronx, New York, again, for the purpose of selling the illegally obtained guns.

On two occasions during this investigation, Vereen voluntarily met with agents from the Bureau of Alcohol, Firearms, Tobacco, and Explosives ("ATF") for non-custodial interviews, without the benefit of a proffer agreement. During both interviews, Vereen provided false information to the interviewing agents. In particular, Vereen lied regarding: the identities of the individuals to whom he sold firearms, how Vereen received payment for those firearms; and with whom Vereen had phone contact over the course of the scheme. Vereen's false statements materially interfered with the investigation, and are the basis for the obstruction points incorporated into the Guidelines calculation.

The full scope of Vereen's dishonesty came into focus during the trial of Vereen's co-defendant and co-conspirator Perez. In addition to repeating lies about with whom he had contact and the identities of those whom he sold firearms, during meetings a the Government pursuant to a proffer agreement, Vereen disclaimed a meaningful relationship with Perez, explaining only that he and Perez had grown up in proximity to each other in the Bronx. However, during trial, a defense witness testified under oath that, in fact, Vereen and Perez are related, and that the two had attended a family gathering as recently as 2018. Vereen's minimization of his relationship with Perez, much like his broader minimization of the offense conduct, is troubling.

### b. The Gun Recoveries

By acting as a straw purchaser, Vereen enabled Perez and others to carry out their scheme to move guns into New York and other states without appropriate licenses. As stated above, several of the Vereen-purchased firearms have been recovered by law enforcement. Those recoveries, include, among others, the following:

- On June 23, 2021, the New York City Police Department ("NYPD") recovered from Perez the Canik, which was a Model TP9 (Serial Number ("SN") 20CB25810), purchased by Vereen on October 1, 2020;

- On July 3, 2021, the Massachusetts State Police recovered a Glock 22LT handgun (SN AELY222) from Perez, purchased by Vereen on July 23, 2020;

- On or about February 27, 2022, the NYPD recovered during a traffic stop in New York City a Glock Model 43, 9mm handgun (SN AEYB797), purchased by Vereen on October 31, 2020;

- On September 14, 2022, the NYPD recovered during a traffic stop in New York City a loaded Smith and Wesson 9mm handgun (SN JFC0427), which had been purchased by Vereen on October 1, 2020, along with a large quantity of narcotics; and

- On or about September 1, 2022, the NYPD recovered during a traffic stop in the Bronx a loaded Smith and Wesson .380 caliber handgun (SN RJB4429), purchased by Vereen on October 2, 2020.

### c.  Vereen's Arrest, Plea, and Guidelines Calculation

On or about December 6, 2022, the ATF arrested Vereen on a military base in Savannah, Georgia, where he was serving as an enlisted member of the United States Army.

On March 15, 2023, the defendant pleaded guilty to Count One of the Indictment. In the plea agreement, the parties stipulated that the defendant's base offense level under the United States Sentencing Guidelines ("U.S.S.G") is 12, pursuant to U.S.S.G. § 2K2.1(a)(7). The parties further stipulated that, under U.S.S.G. § 2K2.1(b)(1)(B) and (b)(5), two four-level enhancements are applicable because the offense involved the trafficking of between 8 and 24 firearms. The parties agreed that an additional two-point enhancement applied due to the defendant's efforts to obstruct the investigation by lying to ATF agents. Accounting for a three-level decrease in the offense level for acceptance of responsibility, the parties stipulated that the defendant's total offense level is 19. The parties further stipulated that the defendant has zero criminal history points and therefore is in Criminal History Category I, resulting in a guidelines range of 30 to 37 months' imprisonment (the "Stipulated Guidelines Range").

The Probation Department reached a slightly different Guidelines calculation based on the application of a six-level enhancement under U.S.S.G. § 2K2.1(b)(1)(C), because the offense involved between 8 and 24 firearms. Accordingly, the Guidelines Range calculated by the Probation Department is 37 to 46 months' imprisonment. The Government acknowledges that the calculation by the Probation Department is correct, but will abide by the calculation as set forth in the parties' plea agreement and recommends a sentence at the top of the Stipulated Guidelines Range of 30 to 37 months' imprisonment.

## II.    Discussion

### A.  Applicable Law

The Guidelines still provide important guidance to the Court following *United States* v. *Booker*, 543 U.S. 220 (2005), and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005).  Indeed, although *Booker* held that the Guidelines are no longer mandatory, it also held that they remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing.  *Booker*, 543 U.S. at 264.  As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall* v. *United States*, 552 U.S. 38, 49 (2007).

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(1)-(7).  *See Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)    to afford adequate deterrence to criminal conduct;

(C)    to protect the public from further crimes of the defendant; and

(D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

### B.  A Sentence of at Least 37-Months Imprisonment is Necessary and Appropriate

The Government respectfully submits that the statutory sentencing factors set forth in Title 18, United States Code, Section 3553(a) weigh in favor of a sentence at the top of the Stipulated Guidelines Range, to be followed by three years of supervised release.  The factors particularly applicable here include the need for the sentence to reflect the nature and seriousness of the offense, to afford adequate deterrence to this defendant and others, to protect the public from further crimes of the defendant, and to promote respect for the law. 18 U.S.C. § 3553(a)(2)(A)-(C).

Individuals like the defendant who illegally traffic in firearms are the driving force behind an epidemic of gun violence in New York City.  According to a recent report published by the New York City Mayor's Office, "[i]n 2021 alone, the NYPD removed more than 6,000 guns off

New York City Streets."[2]  There are no gun manufacturers in New York City. Guns flow into the city via traffickers, traveling by car, train, plane, and bus from outside the state, often through the "Iron Pipeline" or the "New York Pipeline"[3] — the very route that the defendant traveled along while transporting the guns that he had purchased in South Carolina.  Lack of access and strict local gun laws create a black market that allows gun traffickers to sell guns across the United States to make quick money. *See United States v. Cavera*, 550 F.3d 180 (2d. Cir. 2008) (district court's decision to consider New York market conditions in order to accomplish the goal of general deterrence in a gun trafficking case not an abuse of discretion).  Motivated by greed, the defendant and others like him exploit the seams in the national gun regulation framework, acting with complete disregard for the danger they create and the lives they put at risk through their misanthropy.

The New York Attorney General estimates that 76% of trafficked guns come into New York from seven states including — as in this case —South Carolina.[4]  Simply put, this conspiracy to traffic guns from South Carolina to New York could not have functioned without the defendant.  As the straw purchaser and willing transporter, Vereen illegally brought two dozen guns from South Carolina to other states.  He brought many of these guns to the dense, highly regulated urban center of New York City, where such weapons create a particularly grave threat of violence, and handed them to individuals who could not legally possess those firearms.  As referenced above, on several occasions, lives of law enforcement officers have been place in peril during standoffs with subjects armed with loaded guns delivered to New York City by Vereen.

Significantly, the defendant's lack of  prior criminal convictions enabled him to play a critical role in this scheme. The very nature of the crime required a "clean" straw purchaser with an unblemished criminal record; a fact that the defendant exploited for a long period of time before he was apprehended and stopped. This crime was not the result of a momentary lapse of judgement. During every firearms purchase, the purchaser is required to fill out ATF Form 4733 on which he must attest to being the true purchaser of the firearm.  The reason for this requirement is simple — it is a means to prevent the circumvention of carefully-crafted gun regulations that ensure firearms do not fall into the wrong hands, including individuals with prior felony convictions and others who cannot legally possess firearms.  As a South Carolina state resident with a concealed pistol permit and no criminal record, the defendant exploited this system by lying when he purchased at least 25 guns on behalf of people who those who could not otherwise have lawfully obtained firearms.  Vereen's decision to straw purchase firearms *over and over and over* again placed the community in peril in a very real and serious way.

A 37-month term of imprisonment would also avoid unwarranted sentencing disparities between similarly situated defendants. In *United States v. Duvaughn Wilson*, No. 21 Cr 249 (SHS),

---

[2] https://www1.nyc.gov/assets/home/downloads/pdf/press-releases/2022/the-blueprint-to-end-gun-violence.pdf.

[3] www.documentcloud.org/documents/21185516-nyc-mayors-blueprint-to-end-gun-violence.

[4] https://targettrafficking.ag.ny.gov.  *See also* https://www.nbcnewyork.com/news/local/gun-trafficking-new-york-laws-violence-eric-schneiderman-illegal-weapon/2040315.

the straw purchaser in the scheme, Duvaughn Wilson, received a 48-month sentence. In that case, the defendant purchased and trafficked nearly 90 guns, leading the court to apply an upward variance. Even though such a variance may not be applicable here, the seriousness of the offense remains the same. In imposing a 48-month sentence in that case, the Honorable Sidney H. Stein explained that the defendant's conduct contributed to the "surge of guns along the so-called iron pipelines in the southern states [to] New York City," which has resulted in an increase in devastating gun violence. *See* Wilson Sent. Tr. at 21. The same is true here.

The defendant's brazen criminal conduct cannot be taken lightly.  He must be held accountable.  As discussed above, the defendant engaged in this conduct with total disregard for its inherent danger.  The defendant acknowledges that his only motivation was financial gain. (PSR at ¶ 23.) And when he was first presented an opportunity to take responsibility for his actions by cooperating with law enforcement, the defendant instead chose to double down on his lies. He repeatedly gave false statements to law enforcement in order to cover up the crimes of his co-conspirators and to minimize his own culpability. At the time of Vereen's false statements, he had relocated to Georgia, where he was serving as an active-duty member of the U.S. Army. Rather than take to heart the ethos of integrity, selflessness, and personal courage espoused by the Army, the defendant instead turned his back on those values in a craven effort to avoid full accountability for his crimes.

In sum, a sentence at the top of the Stipulated Guidelines Range — in particular, a sentence of at least 37 months' incarceration — would adequately balance the various considerations under § 3553(a) and achieve the statute's stated objectives.

## III.    Conclusion

For the reasons set forth above, the Government respectfully requests that the Court impose a sentence of at least 37 months' imprisonment, as such a sentence would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: _Ashley C. Nicolas_

Ashley C. Nicolas
Madison Reddick Smyser
Sarah Mortazavi
Assistant United States Attorneys
(212) 637-2467/-2381/-2520

cc:    Edward Sapone, Esq. (by ECF)

# EXHIBIT A

**Master Gun List**

- FN 503, 9mm handgun, Serial Number ("SN") CV006976;

- MC1 9mm pistol, SN 035736CP;

- Glock 43, 9mm handgun, SN ADWH603;

- Taurus G2C, 9mm handgun, SN ABDWH603;

- Glock 44, 22LR handgun, SN AELY222;

- Glock 19GEN4, 9mm handgun, SN ACMB656;

- Hellcat 9mm Pistol, SN BY306999;

- Taurus Poly Revolver, SN JZ20483;

- Beretta APX 9mm, SN AXC030812;

- Beretta APX 9mm, SN AXC030805;

- Springfield 9mm pistol, SN HG970741;

- Ruger LCR revolver, SN 154025585;

- Beretta 21A .22 pistol, SN BCS19935U;

- Smith & Wesson M&P 9mm handgun, SN JEV8303;

- Canik TP9 9mm handgun, SN 20CB25810;

- Taurus PT738 .380 handgun, SN 1D117214;

- Smith & Wesson 9mm handgun, SN JFC0427;

- SCCY Model CPX2 9mm handgun, SN C023420;

- Smith & Wesson M&P .380 handgun, SN RJB4429;

- Glock GMBH 9mm handgun, SN BRFT833;

- Mossberg MC1SC 9mm handgun, SN 034425C;

- Ruger LCR 38 revolver, SN 1541-34460;

- Glock GMBH 9mm handgun, SN AEYB797;

- Taurus G2C 9mm handgun, SN ABK021341; and

- Canik TP9 9mm handgun, SN 20CB33183